**RUSS AUGUST & KABAT**
Reza Mirzaie, CA SBN 246953
rmirzaie@raklaw.com
James N. Pickens, CA SBN 307474
jpickens@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Tele:      310/826-7474
Fax:       310/826-6991

*Attorneys for Defendant/Counterclaim Plaintiff*
ECOFACTOR, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC, | Case No. 4:22-cv-0162-JSW |
| Plaintiff/Counterclaim Defendant, | |
| v. | **ECOFACTOR'S ANSWER AND COUNTERCLAIMS** |
| ECOFACTOR, INC., | DEMAND FOR JURY TRIAL |
| Defendant/Counterclaim Plaintiff. | |

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

## ANSWER

Subject to its earlier-filed motion to dismiss under the first-to-file rule, Defendant, EcoFactor, Inc., a Delaware corporation ("Defendant," "Counterclaim Plaintiff," or "EcoFactor") through its undersigned counsel, hereby answers the Complaint for Declaratory Judgment filed by Plaintiff Google LLC ("Plaintiff," "Counterclaim Defendant," or "Google") as follows:

## NATURE OF THE ACTION

1. EcoFactor admits that the Complaint purports to set forth a claim for declaratory judgment of non-infringement of U.S. Patent Nos. 8,131,497 ("'497 Patent), 8,423,322 ("'322 Patent"), 8,498,753 ("'753 Patent") and 10,018,371 ("'371 Patent") (collectively, the "Asserted Patents") under Titles 28 and 35 of the United States Code, but otherwise denies the allegations of Paragraph 1 of the Complaint.

2. EcoFactor admits that it has filed a complaint with the Western District of Texas ("W.D. Tex."), Docket No. 6:22-cv-00032 (the "Google W.D. Tex. Action"), claiming that Google's smart thermostat products, including the Nest Thermostat, Nest Thermostat E and the Nest Generation Learning Thermostat, 3rd Gen and their related servers, online interfaces, and accessories (the "Accused Products") infringe the Asserted Patents, but otherwise denies the allegations of Paragraph 2 of the Complaint.

3. EcoFactor admits that an actual and justiciable controversy presently exists between Google and EcoFactor as to whether Google is infringing or has infringed the Asserted Patents, but otherwise denies the allegations of Paragraph 3 of the Complaint.

## THE PARTIES

4. Admitted.

5. Admitted.

RUSS, AUGUST & KABAT

## JURISDICTION AND VENUE

6.  EcoFactor admits that the Complaint purports to set forth a claim for remedy under Titles 28 and 35 of the United States Code, but otherwise denies the allegations of Paragraph 6 of the Complaint.

7.  Pursuant to EcoFactor's motion to dismiss this action under the first-to-file rule, EcoFactor denies that this Court should exercise subject matter jurisdiction over this action because it is not the first-filed action. Otherwise, EcoFactor admits that this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

8.  Admitted.

9.  Admitted.

## INTRADISTRICT ASSIGNMENT

10. Admitted.

## FACTUAL BACKGROUND

11. EcoFactor admits that Google is headquartered at 1600 Amphitheatre Parkway, Mountain view, California, 94043. EcoFactor is without sufficient knowledge or information so as to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint and therefore denies the same.

12. EcoFactor is without sufficient knowledge or information so as to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint and therefore denies the same.

13. EcoFactor admits that it has filed other lawsuits against Google, as well as other smart thermostat manufacturers such as ecobee and Vivint, in the District of Massachusetts, the Western District of Texas, and the ITC regarding infringement of EcoFactor's patents, including, for example, *EcoFactor, Inc. v. Google LLC,* Case No 6:20-cv-00075-ADA (W.D. Texas) (filed in January 2020), but otherwise denies the allegations of Paragraph 13 of the Complaint.

Russ, August & Kabat

14. EcoFactor admits that it filed a complaint against Google at the ITC on October 23, 2019, asserting the same Asserted Patents that are the subject of this action. EcoFactor admits that it filed a lawsuit against Google at the District of Massachusetts on November 12, 2019, asserting the same Asserted Patents that are the subject of this action. EcoFactor admits that the D. Mass. case was statutorily stayed on February 19, 2020, and the ITC instituted the 1185 investigation on November 22, 2019. EcoFactor admits that the ITC issued an initial determination in the 1185 Investigation on April 20, 2021, concluding that Google infringed the asserted claims of the '497 patent, '322 patent, and '371 patent. *See In the matter of Certain Smart Thermostats, Smart HVAC Systems and Components Thereof*, Investigation No. 337-TA-1185, EDIS D.I. 747359, Jan. 20, 2021. EcoFactor admits that it filed an appeal of certain of the Commission's findings, and later sought dismissal of its appeal on December 28, 2021 (*EcoFactor, Inc. v. ITC,* Fed. Cir. No. 21-2339, D.I. 23), which was dismissed. EcoFactor admits that inspection of Google's proprietary and confidential source code was conducted in this District during the onset of the COVID-19 pandemic in person because Google refused to consent to electronic source code review. EcoFactor otherwise is without sufficient knowledge or information so as to form a belief as to the truth of the remaining allegations contained in Paragraph 14 of the Complaint and therefore denies the same.

15. EcoFactor admits that it voluntarily dismissed the District of Massachusetts action on January 10, 2022. *See EcoFactor, Inc. v. Google LLC*, Case No. 1:19-cv-12322-DJC (D. Mass.), D.I. 25 (Jan. 10, 2022). EcoFactor admits that it filed the Google W.D. Tex. Action on January 10, 2022. EcoFactor otherwise denies the allegations of Paragraph 15 of the Complaint.

16. Denied.

RUSS, AUGUST & KABAT

## COUNT I:

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '497 PATENT

17. EcoFactor realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

18. Admitted.

19. EcoFactor admits that it alleges that Google's Accused Products infringe the '497 patent in the Google W.D. Tex. Action, but otherwise denies the allegations of Paragraph 19 of the Complaint.

20. Denied.

21. EcoFactor admits that an actual and justiciable controversy presently exists between Google and EcoFactor as to whether Google is infringing or has infringed the '497 patent, but otherwise denies the allegations of Paragraph 21 of the Complaint.

22. Denied.

## COUNT II:

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '322 PATENT

23. EcoFactor realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

24. Admitted.

25. EcoFactor admits that it alleges that Google's Accused Products infringe the '322 patent in the Google W.D. Tex. Action, but otherwise denies the allegations of Paragraph 25 of the Complaint.

26. Denied.

27. EcoFactor admits that an actual and justiciable controversy presently exists between Google and EcoFactor as to whether Google is infringing or has infringed

the '322 patent, but otherwise denies the allegations of Paragraph 27 of the Complaint.

28. Denied.

## COUNT III:

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '753 PATENT

29. EcoFactor realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

30. Admitted.

31. EcoFactor admits that it alleges that Google's Accused Products infringe the '753 patent in the Google W.D. Tex. Action, but otherwise denies the allegations of Paragraph 31 of the Complaint.

32. Denied.

33. EcoFactor admits that an actual and justiciable controversy presently exists between Google and EcoFactor as to whether Google is infringing or has infringed the '753 patent, but otherwise denies the allegations of Paragraph 33 of the Complaint.

34. Denied.

## COUNT IV:

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '371 PATENT

35. EcoFactor realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

36. Admitted.

37. EcoFactor admits that it alleges that Google's Accused Products infringe the '371 patent in the Google W.D. Tex. Action, but otherwise denies the allegations of Paragraph 37 of the Complaint.

38. Denied.

39. EcoFactor admits that an actual and justiciable controversy presently exists between Google and EcoFactor as to whether Google is infringing or has infringed the '371 patent, but otherwise denies the allegations of Paragraph 39 of the Complaint.

40. Denied.

## PLAINTIFF'S PRAYER FOR RELIEF

41. EcoFactor denies the allegations and prayer for relief sought by Plaintiff.

RUSS, AUGUST & KABAT

**ECOFACTOR'S COUNTERCLAIMS FOR PATENT INFRINGEMENT**

42. EcoFactor realleges and incorporates by reference the foregoing paragraphs as though fully set forth herein.

43. Counterclaim Plaintiff, EcoFactor, Inc., a Delaware corporation ("EcoFactor" or "Counterclaim Plaintiff") through its undersigned counsel, for its counterclaims against Counterclaim Defendant Google LLC ("Counterclaim Defendant"), alleges as follows:

**INTRODUCTION**

44. These counterclaims arise from Counterclaim Defendant's unlawful infringement of the following United States patents owned by EcoFactor: U.S. Patent No. 8,131,497 ("'497 Patent"); U.S. Patent No. 8,423,322 ("'322 Patent"); U.S. Patent No. 8,498,753 ("'753 Patent"); and U.S. Patent No. 10,018,371 ("'371 Patent") (collectively the "Asserted Patents"). EcoFactor owns all right, title, and interest in each of the Asserted Patents.

45. EcoFactor is a privately held company, having its principal place of business at 441 California Avenue, Number 2, Palo Alto, CA 94301. EcoFactor was founded in 2006 and is headquartered in Palo Alto, California. EcoFactor is a leader in smart home energy management services. EcoFactor delivers smart home energy management services that improve energy efficiency, reduce energy bills and vastly increase demand response efficacy – all while maintaining consumer comfort. EcoFactor's patented big-data analytics and machine learning algorithms collect and process massive amounts of residential data – including home thermodynamics, family comfort preferences and schedules, plus external data such as weather – to continually monitor, adapt and learn for optimum energy savings. The company provides homeowners significant cost savings and energy usage benefits. EcoFactor's award-winning service has been offered through channel partners such as utilities, energy retailers, broadband service providers and HVAC companies.

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

46. EcoFactor transformed how homes use energy by applying advanced analytics to connected devices in the home. EcoFactor developed a suite of software known as the "EcoFactor Platform" that incorporates EcoFactor's patented data analytics and machine learning algorithms, as well as EcoFactor's award-winning smart HVAC control technologies. The EcoFactor Platform is software that runs on servers, including cloud servers, in the United States, and provides service to customers in the United States. The source code of the EcoFactor Platform, including for example the platform, quant, and mobile application source code, that comprises the EcoFactor Platform was designed by, created by, and is continuously maintained and improved by EcoFactor employees working in the United States. The EcoFactor Platform actively manages thermostats on occupants' behalf in intelligent ways that improve comfort while helping them save time, energy and money. Utilities, home service providers and homeowners rely on EcoFactor for demand response, energy efficiency, and HVAC performance monitoring services. The EcoFactor Platform includes the software that practices EcoFactor's patents on these features. For example, the EcoFactor Platform includes EcoFactor's patented techniques for monitoring the health and performance of HVAC systems over time, smart thermostat scheduling to improve energy savings and optimize comfort for occupants, and thermodynamic modeling of the user's home and HVAC system to enable dynamic pre-cooling and pre-heating to further improve comfort, save energy, or both, by creating comfortable schedules that also shift energy usage out of periods of peak energy demand.

47. The patented innovations at issue in this action were invented by EcoFactor engineers and researchers. EcoFactor has played a significant role in the development and advancement of such improvements to energy management technology—and the domestic market for them. EcoFactor has expended tens of millions of dollars of research and development and technical services and support in the United States. In recent years, an explosion of imported products that infringe

EcoFactor's innovative Asserted Patents has significantly eroded EcoFactor's market standing. This infringement action is about several patented improvements to smart thermostat systems, smart HVAC systems, and smart HVAC control systems—which took years of research and millions of dollars in U.S. investments to develop, and which are infringed by Counterclaim Defendant's accused products.

## PARTIES

48. Counterclaim Plaintiff EcoFactor is a privately held company, having its principal place of business at 441 California Avenue, Number 2, Palo Alto, CA 94301. EcoFactor was founded in 2006 and is headquartered in Palo Alto, California. EcoFactor is the sole owner of all right, title, and interest in each Asserted Patent.

49. Counterclaim Defendant Google LLC is a wholly-owned subsidiary of Alphabet, Inc, and a Delaware limited liability company with a principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google LLC operates a division named Google Nest ("Nest") which, on information and belief, designs and manufactures, among other things, smart thermostats and smart thermostat systems.

## JURISDICTION AND VENUE

50. Pursuant to EcoFactor's motion to dismiss this action under the first-to-file rule, EcoFactor denies that this Court should exercise subject matter jurisdiction over this action because it is not the first-filed action. Otherwise, this court has original jurisdiction over EcoFactor's counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because they arise under the patent laws of the United States, Title 35 of the United States Code, and supplemental jurisdiction over EcoFactor's counterclaims pursuant to 28 U.S.C. § 1367(a) because the counterclaims are so related to the Counterclaim Defendant's claims that they form part of the same case or controversy under Article III of the United States Constitution.

51. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(b) because Google resides in this District, and also because Google is subject to

personal jurisdiction in this District, and a substantial part of the events giving rise to EcoFactor's claims of infringement (such as the development and sale of Nest thermostats) occurred in this District.

## THE TECHNOLOGY AND PRODUCTS AT ISSUE

52. The products accused of infringing one or more of the Asserted Patents are smart thermostat systems, smart HVAC systems, smart HVAC control systems, and all components (including accessories) thereof offered for sale by the Counterclaim Defendant, including the Google Nest Thermostat, Google Nest Thermostat E, Google's Nest Learning Thermostat Third Generation, and their related networked servers and data centers, online interfaces, and related accessories, all of which are "Accused Products."

53. The Accused Products include thermostat systems that connect to and control an HVAC system, they include smart HVAC systems, and they include components of such systems such as, for example, hubs, panels, and remote sensors. Counterclaim Defendant's smart thermostat devices communicate over a network with other devices and systems offered by Counterclaim Defendant. Counterclaim Defendant's smart thermostat devices connect to the network managed by Counterclaim Defendant via the Internet. For example, the smart thermostats connect to Counterclaim Defendant's networked servers and data centers, online interfaces, and related accessories.

54. When connected as designed, the Accused Products form a smart thermostat system, smart HVAC system, and/or smart HVAC control system. Counterclaim Defendant's smart thermostat systems are "smart" because they are designed to connect to Counterclaim Defendant's servers and data centers (including, e.g., cloud-based servers and backend support), related online interfaces (including, e.g., mobile apps and web portals), and related accessories (e.g., remote temperature sensors), upon importation in the United States, and these connections provide additional "smart" features beyond the capabilities of a traditional

RUSS, AUGUST & KABAT

thermostat. Further, Counterclaim Defendant's smart thermostat systems are "smart" because they support and are marketed as providing features to end users that analyze thermostat and HVAC system data gathered by the smart thermostat systems.

55. Counterclaim Defendant's smart thermostats are installed in the customer's home, and they connect to Counterclaim Defendant's related servers, cloud systems, and remote interfaces. The smart thermostat devices, such as Nest Thermostat, Nest Learning Thermostat Third Generation, or Nest Thermostat E, constitute the "frontend" of the smart thermostat system, smart HVAC system, and/or smart HVAC control system. Such smart thermostat devices can be programmed using the servers and the network maintained by Counterclaim Defendant and which form the "backend" for the smart thermostat. Such smart thermostat systems can be programmed remotely with a web or mobile application offered by Counterclaim Defendant. The web or mobile application communicates with the smart thermostat via computer servers or data centers managed by Counterclaim Defendant, who sells and imports the smart thermostat. Counterclaim Defendant allows an end user to use a web or mobile application on a mobile phone, tablet, laptop, or other computing device to control the smart thermostat systems, such as by adjusting temperature settings. Counterclaim Defendant's smart thermostat systems also communicate data using the network. For example, Counterclaim Defendant's smart thermostat systems send and receive temperature data and/or temperature settings using the network.

56. Counterclaim Defendant's Accused Products, when used in the ordinary manner as advertised and encouraged by Counterclaim Defendant, offer many "smart" features not possible with a traditional thermostat. For example, Counterclaim Defendant's Accused Products have features for smarter scheduling, which can save homeowners energy and improve their comfort. As another example, Counterclaim Defendant's Accused Products have features for HVAC performance

monitoring, which can alert homeowners about problems with the HVAC system. Counterclaim Defendant's Accused Products also allow Counterclaim Defendant to partner with energy companies, such as Austin Energy, to provide additional energy features and benefits to customers. Counterclaim Defendants and/or these energy partners offer rebates and energy savings benefits to customers who participate in "smart" energy savings features of the Accused Products. Counterclaim Defendant collaborates with and maintains partnerships with energy companies such as Austin Energy. The practice of technology protected by EcoFactor's patents is directly relevant to Counterclaim Defendant's activities in providing such benefits to customers in this District.

57. Counterclaim Defendant's Accused Products are designed and specially made and adapted to infringe claims of the Asserted Patents and to embody a material part of the claimed inventions. The Accused Products are installed and used in the United States according to Counterclaim Defendant's design and instructions. Counterclaim Defendant has knowledge as well as notice of its infringement of each asserted patent at least as of October 21, 2019. Counterclaim Defendant knowingly induces and encourages the use of the Accused Products in the United States in a manner that infringes the asserted claims of the Asserted Patents. Counterclaim Defendant infringes the Asserted Patents directly, through making, using, selling, and/or offering for sale the Accused Products. Counterclaim Defendant also infringes the Asserted Patents indirectly, both for example through contributory infringement as well as through induced infringement. The infringement of the Asserted Patents is also attributable to Counterclaim Defendant. Counterclaim Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement the Asserted Patents, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

## COUNT I:

## INFRINGEMENT OF U.S. PATENT NO. 8,423,322

58.     Counterclaim Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

59.     Counterclaim Plaintiff owns all rights, title, and interest in United States Patent No. 8,423,322, titled "System and method for evaluating changes in the efficiency of an HVAC system." The '322 Patent was duly and legally issued by the United States Patent and Trademark Office on April 16, 2013. Counterclaim Plaintiff is the owner and assignee, possessing all substantial rights, to the '322 Patent. A true and correct copy of the '322 Patent is attached as Exhibit 1.

60.     On information and belief, Counterclaim Defendant makes, uses, offers for sale, sells, and/or imports certain smart thermostat products ("Accused Products"), referring to the smart thermostat systems, smart HVAC control systems, and/or smart HVAC systems provided by Counterclaim Defendant, such as the Nest Thermostat, Nest Learning Thermostat (3rd Generation), and Nest Thermostat E, and Counterclaim Defendant's servers and backend cloud systems for Nest-branded products including Nest-branded thermostats, that directly infringe, literally and/or under the doctrine of equivalents, claims 1-14 of the '322 Patent.  The definition of "Accused Products" may additionally include related interfaces for the Nest-branded thermostats, such as the Nest app or Google Home app, and/or related accessories, such as Nest Temperature Sensor.

61.     The infringement of the '322 Patent is also attributable to Counterclaim Defendant. Counterclaim Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement of the patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

62.     Counterclaim Defendant also knowingly and intentionally induces infringement of claims of the '322 Patent in violation of 35 U.S.C. § 271(b). Since

at least October 21, 2019, Counterclaim Defendant has had knowledge of the '322 Patent and the infringing nature of the Accused Products. Despite this knowledge of the '322 Patent, Counterclaim Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '322 Patent. Counterclaim Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Counterclaim Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '322 Patent, thereby specifically intending for and inducing its customers to infringe the '322 Patent through the customers' normal and customary use of the Accused Products.

63.     Counterclaim Defendant has also infringed, and continue to infringe, claims of the '322 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Counterclaim Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Counterclaim Defendant has been, and currently is, contributorily infringing the '322 Patent, in violation of 35 U.S.C. § 271(c).

64.     The Accused Products satisfy all claim limitations of claims of the '322 Patent. A claim chart comparing claim elements of the '322 Patent to representative Accused Products is attached as Exhibit 2.

65.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Counterclaim Defendant has injured Counterclaim Plaintiff and is liable for infringement of the '322 Patent pursuant to 35 U.S.C. § 271.

RUSS, AUGUST & KABAT

66.    As a result of Counterclaim Defendant's infringement of the '322 Patent, Counterclaim Plaintiff is entitled to monetary damages in an amount adequate to compensate for Counterclaim Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Counterclaim Defendant, together with interest and costs as fixed by the Court.

67.    Counterclaim Defendant's infringing activities have injured and will continue to injure Counterclaim Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '322 Patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

68. Counterclaim Defendant also, within the meaning of 35 U.S.C. § 284, knowingly, willfully, recklessly, egregiously and wantonly continues to infringe the '322 Patent, through making, using, selling, offering to sell and/or importing Accused Products with knowledge, since at least October 21, 2019, that these activities infringe the '322 Patent. Counterclaim Plaintiff is therefore entitled to enhanced damages.

69. EcoFactor's '322 patent is valid and enforceable.

70. EcoFactor has complied with 35 U.S.C. ¶ 287.

## COUNT II:
## INFRINGEMENT OF U.S. PATENT NO. 8,131,497

71. Counterclaim Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

72. Counterclaim Plaintiff is the owner and assignee of United States Patent No. 8,131,497, titled "System and method for calculating the thermal mass of a building." The '497 patent was duly and legally issued by the United States Patent and Trademark Office on March 6, 2012. Counterclaim Plaintiff is the owner and assignee, possessing all substantial rights, to the '497 Patent. A true and correct copy of the '497 Patent is attached as Exhibit 3.

RUSS, AUGUST & KABAT

73. On information and belief, Counterclaim Defendant makes, uses, offers for sale, sells, and/or imports certain smart thermostat products ("Accused Products"), referring to the smart thermostat systems, smart HVAC control systems, and/or smart HVAC systems provided by Counterclaim Defendant, such as the Nest Thermostat, Nest Learning Thermostat (3rd Generation), and Nest Thermostat E, and Counterclaim Defendant's servers and backend cloud systems for Nest-branded products including Nest-branded thermostats, that directly infringe, literally and/or under the doctrine of equivalents, claims 1-12 of the '497 Patent. The definition of "Accused Products" may additionally include related interfaces for the Nest-branded thermostats, such as the Nest app or Google Home app, and/or related accessories, such as Nest Temperature Sensor.

74. The infringement of the '497 Patent is also attributable to Counterclaim Defendant. Counterclaim Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement of the patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

75. Counterclaim Defendant also knowingly and intentionally induces infringement of claims of the '497 Patent in violation of 35 U.S.C. § 271(b). Since at least October 21, 2019, Counterclaim Defendant has had knowledge of the '497 Patent and the infringing nature of the Accused Products. Despite this knowledge of the '497 Patent, Counterclaim Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '497 Patent. Counterclaim Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Counterclaim Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '497 Patent, thereby specifically intending for

RUSS, AUGUST & KABAT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUSS, AUGUST & KABAT

and inducing its customers to infringe the '497 Patent through the customers' normal and customary use of the Accused Products.

76. Counterclaim Defendant has also infringed, and continue to infringe, claims of the '497 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Counterclaim Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Counterclaim Defendant has been, and currently is, contributorily infringing the '497 Patent, in violation of 35 U.S.C. § 271(c).

77. The Accused Products satisfy all claim limitations of claims of the '497 Patent. A claim chart comparing claim elements of the '497 Patent to representative Accused Products is attached as Exhibit 4.

78. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Counterclaim Defendant has injured Counterclaim Plaintiff and is liable for infringement of the '497 Patent pursuant to 35 U.S.C. § 271.

79. As a result of Counterclaim Defendant's infringement of the '497 Patent, Counterclaim Plaintiff is entitled to monetary damages in an amount adequate to compensate for Counterclaim Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Counterclaim Defendant, together with interest and costs as fixed by the Court.

80. Counterclaim Defendant's infringing activities have injured and will continue to injure Counterclaim Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '497 Patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

81. Counterclaim Defendant also, within the meaning of 35 U.S.C. § 284, knowingly, willfully, recklessly, egregiously and wantonly continues to infringe the '497 Patent, through making, using, selling, offering to sell and/or importing Accused Products with knowledge, since at least October 21, 2019, that these activities infringe the '497 Patent. Counterclaim Plaintiff is therefore entitled to enhanced damages.

82. EcoFactor's '497 patent is valid and enforceable.

83. EcoFactor has complied with 35 U.S.C. ¶ 287.

## COUNT III:

## INFRINGEMENT OF U.S. PATENT NO. 8,498,753

84. Counterclaim Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

85. Counterclaim Plaintiff is the owner and assignee of United States Patent No. 8,498,753 titled "System, method and apparatus for just-in-time conditioning using a thermostat." The '753 Patent was duly and legally issued by the United States Patent and Trademark Office on July 30, 2013. Counterclaim Plaintiff is the owner and assignee, possessing all substantial rights, to the '753 Patent. A true and correct copy of the '753 Patent is attached as Exhibit 5.

86. On information and belief, Counterclaim Defendant makes, uses, offers for sale, sells, and/or imports certain smart thermostat products ("Accused Products"), referring to the smart thermostat systems, smart HVAC control systems, and/or smart HVAC systems provided by Counterclaim Defendant, such as the Nest Thermostat, Nest Learning Thermostat (3rd Generation), and Nest Thermostat E, and Counterclaim Defendant's servers and backend cloud systems for Nest-branded products including Nest-branded thermostats, and related interfaces for the Nest-branded thermostats, such as the Nest app or Google Home app, or other online interface, that directly infringe, literally and/or under the doctrine of equivalents,

RUSS, AUGUST & KABAT

18

claims 1-20 of the '753 Patent. The definition of "Accused Products" may additionally include related accessories, such as Nest Temperature Sensor.

87. The infringement of the '753 Patent is also attributable to Counterclaim Defendant. Counterclaim Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement of the patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

88. Counterclaim Defendant also knowingly and intentionally induces infringement of claims of the '753 Patent in violation of 35 U.S.C. § 271(b). Since at least October 21, 2019, Counterclaim Defendant has had knowledge of the '753 Patent and the infringing nature of the Accused Products. Despite this knowledge of the '753 Patent, Counterclaim Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '753 Patent. Counterclaim Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Counterclaim Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '753 Patent, thereby specifically intending for and inducing its customers to infringe the '753 Patent through the customers' normal and customary use of the Accused Products.

89. Counterclaim Defendant has also infringed, and continue to infringe, claims of the '753 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Counterclaim Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial

RUSS, AUGUST & KABAT

noninfringing use. Accordingly, Counterclaim Defendant has been, and currently is, contributorily infringing the '753 Patent, in violation of 35 U.S.C. § 271(c).

90. The Accused Products satisfy all claim limitations of claims of the '753 Patent. A claim chart comparing claim elements of the '753 Patent to representative Accused Products is attached as Exhibit 6.

91. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Counterclaim Defendant has injured Counterclaim Plaintiff and is liable for infringement of the '753 Patent pursuant to 35 U.S.C. § 271.

92. As a result of Counterclaim Defendant's infringement of the '753 Patent, Counterclaim Plaintiff is entitled to monetary damages in an amount adequate to compensate for Counterclaim Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Counterclaim Defendant, together with interest and costs as fixed by the Court.

93. Counterclaim Defendant's infringing activities have injured and will continue to injure Counterclaim Plaintiff, unless and until this Court enters an injunction prohibiting further infringement of the '753 Patent, and, specifically, enjoining further manufacture, use, sale, importation, and/or offers for sale that come within the scope of the patent claims.

94. Counterclaim Defendant also, within the meaning of 35 U.S.C. § 284, knowingly, willfully, recklessly, egregiously and wantonly continues to infringe the '753 Patent, through making, using, selling, offering to sell and/or importing Accused Products with knowledge, since at least October 21, 2019, that these activities infringe the '753 Patent. Counterclaim Plaintiff is therefore entitled to enhanced damages.

95. EcoFactor's '753 patent is valid and enforceable.

96. EcoFactor has complied with 35 U.S.C. ¶ 287.

RUSS, AUGUST & KABAT

RUSS, AUGUST & KABAT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**COUNT IV:**

**INFRINGEMENT OF U.S. PATENT NO. 10,018,371**

97. Counterclaim Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

98. Counterclaim Plaintiff is the owner and assignee of United States Patent No. 10,018,371, titled "System, method and apparatus for identifying manual inputs to and adaptive programming of a thermostat." The '371 Patent was duly and legally issued by the United States Patent and Trademark Office on July 10, 2018. Counterclaim Plaintiff is the owner and assignee, possessing all substantial rights, to the '371 Patent. A true and correct copy of the '371 Patent is attached as Exhibit 7.

99. On information and belief, Counterclaim Defendant makes, uses, offers for sale, sells, and/or imports smart thermostat products ("Accused Products"), referring to the smart thermostat systems, smart HVAC control systems, and/or smart HVAC systems provided by Counterclaim Defendant, such as the Nest Thermostat, Nest Learning Thermostat (3rd Generation), and Nest Thermostat E, and Counterclaim Defendant's servers and backend cloud systems for Nest-branded products including Nest-branded thermostats, and related interfaces for the Nest-branded thermostats, such as the Nest app or Google Home app, that directly infringe, literally and/or under the doctrine of equivalents, claims 1-24 of the '371 Patent. The definition of "Accused Products" may additionally include related accessories, such as Nest Temperature Sensor.

100. The infringement of the '371 Patent is also attributable to Counterclaim Defendant. Counterclaim Defendant and/or users of the Accused Products directs and controls use of the Accused Products to perform acts that result in infringement of the patent, conditioning benefits on participation in the infringement and establishing the timing and manner of the infringement.

RUSS, AUGUST & KABAT

101.   Counterclaim Defendant also knowingly and intentionally induces infringement of claims of the '371 Patent in violation of 35 U.S.C. § 271(b). Since at least October 21, 2019, Counterclaim Defendant has had knowledge of the '371 Patent and the infringing nature of the Accused Products. Despite this knowledge of the '371 Patent, Counterclaim Defendant continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website) to use the Accused Products in ways that directly infringe the '371 Patent. Counterclaim Defendant does so knowing and intending that its customers and end users will commit these infringing acts. Counterclaim Defendant also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '371 Patent, thereby specifically intending for and inducing its customers to infringe the '371 Patent through the customers' normal and customary use of the Accused Products.

102.   Counterclaim Defendant has also infringed, and continue to infringe, claims of the '371 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Counterclaim Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Counterclaim Defendant has been, and currently is, contributorily infringing the '371 Patent, in violation of 35 U.S.C. § 271(c).

103.   The Accused Products satisfy all claim limitations of claims of the '371 Patent. A claim chart comparing claim elements of the '371 Patent to representative Accused Products is attached as Exhibit 8.

104.   By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Counterclaim Defendant has injured

1   Counterclaim Plaintiff and is liable for infringement of the '371 Patent pursuant to

2   35 U.S.C. § 271.

3       105.   As a result of Counterclaim Defendant's infringement of the '371

4   Patent, Counterclaim Plaintiff is entitled to monetary damages in an amount

5   adequate to compensate for Counterclaim Defendant's infringement, but in no event

6   less than a reasonable royalty for the use made of the invention by Counterclaim

7   Defendant, together with interest and costs as fixed by the Court.

8       106.   Counterclaim Defendant's infringing activities have injured and will

9   continue to injure Counterclaim Plaintiff, unless and until this Court enters an

10  injunction prohibiting further infringement of the '371 Patent, and, specifically,

11  enjoining further manufacture, use, sale, importation, and/or offers for sale that come

12  within the scope of the patent claims.

13      107.   Counterclaim Defendant also, within the meaning of 35 U.S.C. § 284,

14  knowingly, willfully, recklessly, egregiously and wantonly continues to infringe the

15  '371 Patent, through making, using, selling, offering to sell and/or importing

16  Accused Products with knowledge, since at least October 21, 2019, that these

17  activities infringe the '371 Patent. Counterclaim Plaintiff is therefore entitled to

18  enhanced damages.

19      108.   EcoFactor's '371 patent is valid and enforceable.

20      109.   EcoFactor has complied with 35 U.S.C. ¶ 287.

21                    **<u>ECOFACTOR'S PRAYER FOR RELIEF</u>**

22      WHEREFORE, Defendant/Counterclaim Plaintiff EcoFactor, Inc. request

23  that this Court enter:

24      A.    A judgment in favor of Defendant/Counterclaim Plaintiff that

25  Plaintiff/Counterclaim Defendant has infringed, literally and/or under the doctrine

26  of equivalents, the '322 Patent, the '497 Patent, the '753 Patent, and the '371 Patent;

27      B.    A judgment in favor of Defendant/Counterclaim Plaintiff that

28  Plaintiff/Counterclaim Defendant's infringement of the '322 Patent, the '497 Patent,

RUSS, AUGUST & KABAT

the '753 Patent, and the '371 Patent has been willful and egregious under 35 U.S.C. § 284;

C.     A permanent injunction prohibiting Plaintiff/Counterclaim Defendant from further acts of infringement of the '322 Patent, the '497 Patent, the '753 Patent, and the '371 Patent;

D.     A judgment and order requiring Plaintiff/Counterclaim Defendant to pay Defendant/Counterclaim Plaintiff its damages, enhanced damages, costs, expenses, and pre-judgment and post-judgment interest for Plaintiff/Counterclaim Defendant's infringement of the '322 Patent, the '497 Patent, the '753 Patent, and the '371 Patent;

E.     A judgment and order requiring Plaintiff/Counterclaim Defendant to provide accountings and to pay supplemental damages to Defendant/Counterclaim Plaintiff, including without limitation, pre-judgment and post-judgment interest;

F.     A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Defendant/Counterclaim Plaintiff its reasonable attorneys' fees against Plaintiff/Counterclaim Defendant; and

G.     Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Defendant/Counterclaim Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

RUSS, AUGUST & KABAT

DATED: March 21, 2022             Respectfully submitted,

**RUSS AUGUST & KABAT**


By:  */s/ Reza Mirzaie*

Reza Mirzaie
James N. Pickens
RUSS AUGUST & KABAT
12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025
Tel: 310-826-7474
Fax: 310-826-6991
rmirzaie@raklaw.com
jpickens@raklaw.com
rak_ecofactor@raklaw.com

*Attorneys for Defendant/Counterclaim Plaintiff*
ECOFACTOR, INC.

1

## CERTIFICATE OF SERVICE

2          I certify that this document is being served upon counsel of record for Plaintiff on March

3    21, 2022 via electronic service.

4

5                                  /s/ *Reza Mirzaie*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUSS, AUGUST & KABAT